FILED

2008 May-22  AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

WILLIE DRAKE-SIMS,

      Plaintiff,

v.                                    CV-07-J-670-S

BURLINGTON COAT FACTORY
WAREHOUSE OF NORTH
BIRMINGHAM, Inc.,  BURLINGTON
COAT FACTORY WAREHOUSE
OF HOOVER, Inc., and BURLINGTON
COAT FACTORY OF ALABAMA,
LLC.,

      Defendants.

## MEMORANDUM OPINION

Pending before the court is Burlington Coat Factory of Alabama, LLC's[1]

("BCF") Motion for Summary Judgment which moves the court to grant summary

judgment in its favor on all of the claims asserted by the plaintiff (doc. 21).  BCF

filed a brief and evidentiary materials in support of its motion (doc. 22 &

attachments 1-11 to doc. 23).  The plaintiff filed a response in opposition (doc. 24)

to which BCF filed a reply (doc. 26).

---

[1]According to the defendant's motion, Burlington Coat Factory of Alabama, LLC is the proper defendant in this case (doc. 21 at 1).  Burlington Coat Factory of North Birmingham, Inc. and Burlington Coat Factory of Hoover, Inc. are former names of Burlington Coat Factory of Alabama, LLC.  *Id.*

Upon consideration of all of the parties' motions, evidentiary submissions, and written arguments, the court concludes that BCF's Motion for Summary Judgment is due to be **GRANTED** on all counts as set out below.

### Factual Background

The plaintiff was employed by BCF from September 11, 1989, until her termination on August 7, 2006.  Sims dep. at 22, 198.  The plaintiff was initially hired by BCF as a sales associate at its Hoover, Alabama store.  *Id*. at 23.  Over the next nine years, BCF promoted the plaintiff to increasingly higher level positions, culminating in her promotion to assistant manager-operations at its new Crestwood store.  *Id*. at 23-25.  The Crestwood store's upper management team consisted of a store manager and two assistant managers - one in charge of operations and one in charge of merchandising.  *Id*. at 27-28.  The first store manager at the Crestwood store was Beverly Knight, who, like the plaintiff, was promoted from the Hoover store.  *Id*. at 26-27.  The assistant manager-merchandising position was initially filled by Wilma Ursha and later by Larry Langston, both of whom are Caucasian.  *Id*. at 28.

In March of 2004 Sims, Knight, and Langston each filed EEOC charges against BCF alleging pay discrepancies between the Crestwood and Hoover stores.  *Id*. at 49-50; exh. 4 thereto.  During this period, Annie Kearby and Laurie Ann

Bardin, both Caucasian, were the assistant managers at the Hoover store. *Id*. at 97; 114-15. Kearby was making $48,000.00 per year and Bardin was making $47,000.00 per year. Brawner aff. at ¶ 11-12. The EEOC dismissed the plaintiff's charge and issued her a letter informing her of her rights on September 30, 2004. Sims dep. at exh. 4.

In August of 2004 Beverly Knight, the Crestwood store manager, left BCF creating one of the vacancies that the plaintiff claims she should have been selected to fill. Sims dep. at 29-30; 117-18. The Crestwood store manager position was eventually filled by Holly McGee. *Id*. at 117-18. In the interim between Knight leaving and McGee's hiring, the plaintiff served as the acting store manager.[2] *Id.* at 118-19.

Dick Lange, BCF's district manager, testified that he considered both the plaintiff and Bardin for the Crestwood store manager position. Lange dep. at 26-28. However, he hired McGee rather than the plaintiff or Bardin because he believed that McGee was more qualified given her experience as a store manager in a high volume store which was undergoing significant change at the time and she had previous experience as a buyer. Lange dep. at 28-29.

---

[2]Although the plaintiff's title never changed from assistant manager-operations, BCF admits that the plaintiff took on the store manager's responsibilities from August of 2004 until March of 2005. Lange dep. at 49-50.

On January 18, 2005, the plaintiff filed a voluntary petition for bankruptcy protection under Chapter 13. *See* attachment 10 to doc. 23.[3]  The plaintiff filed the required schedules and Statement of Financial Affairs ("SFA") listing her assets and liabilities. *Id*. The plaintiff's SFA did not include the 2004 EEOC charge filed against BCF, nor did it include a later EEOC charge that was filed by the plaintiff while her bankruptcy case was still pending. *See Id*. The plaintiff was discharged from bankruptcy on July 14, 2006. *Id*.

In March of 2005, after McGee was hired as the Crestwood store manager, the plaintiff wrote to BCF's corporate human resources department complaining that she should have been promoted to store manager. Sims dep. at 178-179; exhibit 9 thereto. The letter detailed sixteen reasons why the plaintiff believed she was deserving of the promotion. Sims dep. at exh. 9. In approximately July of 2005, BCF responded to the plaintiff's letter by sending Todd Brawner, the new regional manager, Wade Seale, the old regional manager, and Lange to meet with the plaintiff and deliver a written response to the concerns stated in the plaintiff's letter. Sims dep. at 180-81; Brawner dep. at 130-31. BCF's written response

---

[3]The plaintiff's bankruptcy records are listed on CM/ECF as exhibit 11 when in fact they are exhibit 10. The bankruptcy records are labeled as exhibit 11 on CM/ECF because exhibit 3A is listed as exhibit 4, which means every exhibit after exhibit 4 on CM/ECF is one number off the actual exhibit number.

refuted many of the plaintiff's assertions regarding her purported success as the acting store manager.  Brawner dep. at exh. F.

In November of 2005, the plaintiff faxed her resume to Lange in an effort to obtain an open store manager position at the Hoover store.  Sims dep. at 190-93. In December of 2005 Elaine Cox, who was then working as a store manager at Stein Mart, was hired as the Hoover store manager.  Brawner dep. at 137. According to Brawner, the plaintiff did not receive the Hoover store manager position because 1) Cox came to BCF with store manager experience, 2) by the time the plaintiff faxed her resume to indicate an interest in the position BCF was already in the process of hiring Cox, and 3) the plaintiff's performance had not improved significantly since the meeting in July 2005 where it was explained to the plaintiff why she had not previously been promoted.  Brawner dep. at 136-43.

In November of 2005 McGee informed the plaintiff about reports that certain employees - Jehri Hunter and Mary Glenn - were stealing merchandise from the store.  Sims dep. at 136.  In addition, the Crestwood store coats and linen department manager Sheena Harrison reported to the plaintiff that she believed Hunter and Glenn were having merchandise taken out of the store by a third employee - LaParisha Denton - before other employees arrived.  Sims dep. at 134-35.  On December 24, 2005, Harrison reported to the plaintiff a possible ongoing

theft by employees working at the front of the store.  Sims dep. at 125-29.  The plaintiff investigated the report and found that a transaction was voided using Holly McGee's key card.  *Id*. at 136.[4]  The plaintiff asked McGee about the transaction and McGee admitted that she had not voided the transaction herself. *Id*.  McGee further admitted that she had given her key card to another employee in violation of company policy.[5]  *Id*.  McGee asked the plaintiff and Harrison to not report the potential loss and violation of company policy because McGee was scared she would be fired for her own involvement.  Sims dep. at 126-28.  The plaintiff agreed and accordingly did not report the incident to the district manager. *Id*.

On February 14, 2006, the plaintiff filed her second EEOC charge against BCF regarding the failure to promote her to Hoover store manager.  Sims dep. at 193-95; exh. 13 thereto.  Sims received her dismissal and notice of rights from the EEOC around June 30, 2006.  Sims dep. at 195-97; exh. 14 thereto.

In July of 2006 a loss prevention investigation was initiated at the

---

[4]In most BCF stores, upper management and the customer service manager are the only employees authorized to void transactions.  Sims dep. at 140-41, 143.

[5]According to the plaintiff, the sharing of key cards between senior managers and other employees was a common occurrence because there were typically not enough senior managers to cover both the receiving functions and the frontline cashier functions at the same time.  Sims dep. at 131-32.

Crestwood store because the fiscal year end inventory in the Crestwood store showed an excessively high loss. Brawner dep. at 36-37. The plaintiff was interviewed as part of the investigation and she provided a handwritten statement regarding her knowledge of the relevant events. Sims dep. at 201-02; exh. 17 thereto. As a result of the investigation, the plaintiff was terminated for not reporting the potential theft to the district manager. Brawner dep. at 192-93. According to BCF, the plaintiff should not have agreed with McGee to conceal the fact that McGee had let another employee borrow her key card. *Id*. At the time the investigation was conducted, McGee had already left the company. *Id*. at 38.

In addition to the plaintiff, several other individuals were disciplined or terminated as a result of the information discovered during the investigation. Brawner dep. at 81-82; 87-118; exhs. 2, 3, & 4 thereto. Justin Wright, a Caucasian employee was fired because he had knowledge of a theft and failed to report it. Brawner dep. at 87-89; 92-93; exh. 4 thereto. Sheena Harrison and Jheri Hunter, both African American employees, were the only two employees found to have done something wrong who were not terminated at the end of the investigation. Brawner dep. at 125-26. Hunter was not disciplined for any knowledge about the wrongdoing of others. *Id*. She was, however, given a written corrective for giving her key tag out from time to time. *Id*. Harrison was not terminated because she

7

reported the potential loss to her immediate supervisor, the plaintiff. *Id*. at 107-118. The reason the plaintiff was fired over this issue and Harrison was not is that the plaintiff was a member of the senior management team of the store and was held to a higher standard than Harrison, who was a department manager. *Id*. at 193-212. Further, BCF's loss prevention policy provides that a manager or employee who has a question about a loss prevention matter should contact his or her supervisor or, if "there is involvement by the immediate supervisor, he or she should contact Corporate Loss Prevention." Brawner aff. at ¶ 2; exh. A thereto.

## Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery
> and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an
> element essential to that party's case, and on which that
> party will bear the burden of proof at trial. In such a
> situation, there can be "no genuine issue as to any
> material fact," since a complete failure of proof
> concerning an essential element of the nonmoving

> party's case necessarily renders all other facts
> immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment

always bears the initial responsibility of informing the court of the basis for its

motion and identifying those portions of the pleadings or filings which it believes

demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The

burden then shifts to the nonmoving party to "go beyond the pleadings and by ...

affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*

at 324 (quoting  Fed. R. Civ. P. 56(e)).  In meeting this burden the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue

for trial."  Fed. R. Civ. P.  56(e); *Matsushita*, 475 U.S. at 587.

On motions for summary judgment, the court shall construe the evidence

and factual inferences arising therefrom in the light most favorable to the

nonmoving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The

substantive law will identify which facts are material and which are irrelevant.

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).  All reasonable doubts

about the facts and all justifiable inferences are resolved in favor of the

nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A

dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If the evidence is

merely colorable, or is not significantly probative, summary judgment may be

granted.  *Id*. at 249-50.  The basic issue before the court on a motion for summary

judgment is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law."  *Id.* at 251-252.

## Discussion

The plaintiff's Third Amended Complaint asserts one cause of action for

declaratory, injunctive and other equitable relief and damages (doc. 17).

Specifically, the plaintiff asserts that she was not selected for the store manager

positions at Crestwood and Hoover because of race.  The plaintiff also contends

that she received unequal pay for equal work performed by white employees at

BCF.  In addition, the plaintiff claims that she was terminated because of her race

and that she was retaliated against for filing EEOC charges and this lawsuit.


*I. The plaintiff's pay and promotion claims - monetary damages.*

BCF claims that summary judgment is due to be granted on the plaintiff's

pay and promotion claims because those claims are barred by judicial estoppel. Judicial estoppel is an equitable doctrine that precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting 18 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 134.30, p. 134-62 (3d ed. 2000)). The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

The applicability of judicial estoppel largely turns on two factors. *Id.* First, a party's allegedly inconsistent positions must have been "made under oath in a prior proceeding." *Id*. (quoting *Salomon Smith Barney, Inc. v. Harvey*, *M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id*. (quoting *Salomon Smith Barney, Inc.*, 260 F.3d at 1308). "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id*. at 1286.

The Eleventh Circuit Court of Appeals has held that judicial estoppel

applies to both Chapter 7 and Chapter 13 bankruptcy cases. *See, e.g., DeLeon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291-92 (11th Cir. 2003).  In bankruptcy cases, there is no question that the plaintiff submits the SFA under oath to the bankruptcy court. *See Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1294 (11th Cir. 2003); attachment 10 to doc. 23.  Therefore, the issue in these cases is intent.  For purposes of judicial estoppel, intent is a purposeful contradiction - not simple error or inadvertence. *Burnes*, 291 F.3d at 1286.  "[D]eliberate or intentional manipulation can be inferred from the record," where the debtor has knowledge of the undisclosed claims and has motive for concealment. *Id*. at 1287.

In this case, the plaintiff had both knowledge of the undisclosed claims and a motive for concealment.  It is undisputed that the plaintiff had knowledge of the EEOC charges as she filed the charges herself.  As the Eleventh Circuit explained in *DeLeon*, a financial motive to secret assets exists under Chapter 13 because the hiding of assets affects the amount to be discounted and repaid. *DeLeon*, 321 F.3d at 1291.  Indeed, the plaintiff stands to benefit from omitting the EEOC claims on her SFA because she can keep any proceeds from this lawsuit for herself and not have them become part of the bankruptcy estate.  The plaintiff's knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation of the judicial system. Therefore, the

12

doctrine of judicial estoppel precludes the plaintiff's pay and promotion claims.

However, summary judgment is only due to be granted on the plaintiff's claims for monetary damages because judicial estoppel does not prevent the plaintiff from pursuing claims which add no monetary value to the bankruptcy estate. *Burnes,* 291 F.3d at 1289. Therefore, judicial estoppel does not preclude that plaintiff from pursuing her claims for equitable relief.

*II. Plaintiff's Pay and Promotion Claims - Equitable Relief.*

Because judicial estoppel can only be applied to the plaintiff's pay and promotion claims for monetary damages, the plaintiff's pay and promotion claims for equitable relief must be analyzed under the traditional Title VII framework. *See Casanova v. Pre Solutions*, 228 Fed. Appx. 837, 841 (11th Cir. 2007). In cases involving circumstantial evidence of discrimination under Title VII and 42 U.S.C. § 1981, courts use the analytical framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), which requires the plaintiff first to demonstrate a prima facie case of discrimination. Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248; 254 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the alleged

discriminatory employment action. *Harris v. Shelby County Bd. of Educ.,* 99 F.3d

1078, 1083 (11th Cir. 1996). The defendant can feasibly present such strong

evidence of a nondiscriminatory rationale that summary judgment is warranted.

*Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991),

*cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821

F.2d 590, 596 (11th Cir. 1987)).

Once a defendant presents a legitimate, nondiscriminatory reason for its

action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S.

at 255, n. 10. The plaintiff must then demonstrate by a preponderance of the

evidence that the reason offered by the defendant was not the true reason for the

employment decision, but rather a mere pretext for discrimination. *McDonnell*

*Douglas*, 411 U.S. at 804. The focus of the case after the defendant meets its

burden of production is on the defendant's subjective intent and the motivation

behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99

F.3d at 1083.

The plaintiff can establish a prima facie case that she was discriminated

against in violation of Title VII by showing: (1) she is a member of a protected

class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000).

BCF asserts that summary judgment is due to be granted on the plaintiff's pay and promotion claims because she cannot identify similarly situated employees outside the protected classification who were treated more favorably. To show that employees are similarly situated, the plaintiff must establish that the employees are "similarly situated in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). The comparator must be "nearly identical" to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. *Id*.

For her pay claim, the plaintiff compares herself to Kearby and Bardin, both of whom were hired by BCF as assistant managers. Both Kearby and Bardin were hired with experience as assistant managers with competitors and both demanded higher salaries to leave those jobs and accept positions with BCF. Bardin aff. ¶ 2; Kearby aff. ¶ 2. Bardin made over $40,000.00 prior to joining BCF and Kearby demanded $38,000.00 to accept a job with BCF initially. *Id*. Kearby further increased her pay by obtaining competing offers and by leaving BCF to obtain a

pay increase and demanding a further increase to return.  Kearby aff. ¶ 3. The

plaintiff, on the other hand, began her employment with BCF in 1989 as a sales

associate and was promoted through the ranks to assistant manager in 1998.  Sims

dep. at 23-27.  Unlike Bardin and Kearby, the plaintiff had no experience outside

BCF and never received any competing offers from outside employers.  Therefore,

BCF was not required to pay the plaintiff a premium in order to recruit or retain

her.  The court finds Bardin and Kearby are not similarly situated as their

experience prior to joining BCF was far different from the plaintiff's.  It was

entirely reasonable for BCF to conclude that it needed to pay a premium in order

to recruit and retain Bardin and Kearby and it would not be appropriate for this

court to second guess that decision.

    For her promotion claim, the plaintiff compares herself to Holly McGee and

Elaine Cox who received the vacant store manager positions.  McGee was chosen

in March 2005 for the Crestwood store manager position because she had

experience as a store manager at a high volume store which was going through

significant change at the time, and she had prior experience as a buyer.  Lange

dep. at 28-29; 30-31; 35-36; 63.  Cox received the Hoover store manager position

in December of 2005 because she had store manager experience with Stein Mart.

Brawner dep. at 137.  Sims is not similarly situated to McGee or Cox because

16

unlike them, the plaintiff had no previous experience as a store manager outside of BCF.

The plaintiff asserts in her brief that at the time she sought a promotion she had six years of experience as a store manager. This assertion is incorrect. The plaintiff only served as an acting store manager for a short period of time while the Crestwood store was without one. Moreover, the performance of her store during the periods it was without a store manager certainly did not indicate that the plaintiff was a qualified candidate for the store manager position. Therefore, even if the plaintiff could make a prima facie case, the defendant clearly had legitimate, non-discriminatory reasons for not hiring the plaintiff.

### III. The plaintiff's Termination Claim.

BCF asserts that summary judgment is due to be granted on the plaintiff's termination claim because there is no similarly situated comparator outside her protected class who was treated more favorably. The only possible comparator outside the plaintiff's protected class who had knowledge of a theft and failed to report it is Justin Wright, a non-management, Caucasian employee. However, like the plaintiff he was fired so the plaintiff cannot assert that Wright was treated differently than she was. Sheena Harrison, another possible comparator, provides

17

no help to the plaintiff because she is in the same protected class as the plaintiff. In addition, Harrison was not similarly situated as she was not a member of the "senior management team."

The plaintiff's brief identifies an employee named Pete Rouyverol as a potential comparator. However, Rouyverol was employed as a greeter and there is no evidence that he had any knowledge of the theft. *See* Sims dep. 105-06. Even if Rouyverol did have knowledge of the theft, he is not an appropriate comparator because he was not a member of the senior management team.

## IV. The plaintiff's Retaliation Claim.

The plaintiff claims that she was terminated in retaliation for filing EEOC charges against BCF and for filing this lawsuit. "To establish a prima facie case of retaliation under Title VII, 'the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1021 (11th Cir. 2004). BCF asserts that summary judgment should be granted because the plaintiff cannot establish the third element of her prima facie case.

18

Although close temporal proximity may satisfy the causation element of the prima facie case, "if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas*, 506 F.3d at 1364. Sims filed her second EEOC charge regarding pay and promotion issues in February 2006. However, the plaintiff was not terminated until August of 2006. "A three to four month disparity between statutorily protected expression and the adverse employment action is not enough." *Thomas*, 506 F.3d at 1364. The plaintiff does not allege anything other than timing to connect the filing of the EEOC charge to her termination. Therefore, there is no causal connection between the filing of the EEOC charge and the plaintiff's termination because too much time passed between the two events.

In addition, the plaintiff cannot establish a causal connection between her termination and the filing of her lawsuit because she cannot establish that the decision maker was aware that she had filed the lawsuit. In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997) ("[I]n a case involving a corporate defendant the plaintiff must show

19

that the corporate agent who took the adverse action was aware of the plaintiff's protected expression...."). A decision maker cannot have been motivated to retaliate by something unknown to him. *See Goldsmith*, 996 F.2d at 1163. As with most facts, the defendant's awareness can be established by circumstantial evidence. *Id*.

The plaintiff joined in this lawsuit on July 31, 2006 (Case no. 05-2382, doc. 12). At that time, the loss prevention investigation that led to the plaintiff's termination had already begun. In addition, Brawner, who was the decision maker regarding the plaintiff's termination, was unaware of the lawsuit at the time he decided to terminate the plaintiff. Brawner dep. at 29; 373. The plaintiff does not dispute that Brawner was unaware of the plaintiff's lawsuit when he made the decision to fire her. The plaintiff only argues that Brawner was aware of the EEOC charges (doc. 24 at 17). Therefore, Brawner could not have retaliated against the plaintiff for joining this lawsuit and summary judgment is due to be granted on the plaintiff's claim for retaliation. *See Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (where the decision maker "did not know of the protected conduct, he could not have taken that action on the corporation's behalf because of the protected conduct").

20

**Conclusion**

Having considered the foregoing and being of the opinion that no genuine issues of material fact remain, the court finds that Burlington Coat Factory of Alabama, LLC is entitled to judgment as a matter of law.  It is hereby **ORDERED** that the defendant's Motion for Summary Judgment is **GRANTED** as to all of the plaintiff's claims.  Plaintiff's claims asserted against Burlington Coat Factory of Alabama, LLC are **DISMISSED WITH PREJUDICE.**  Each party shall bear its own costs.

**DONE** and **ORDERED** this the 22nd day of May 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE